IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:19-CV-70-FL

| | | |
|---|---|---|
| CHARLES W. CREECH, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| CITY OF WILSON, NORTH CAROLINA, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's partial motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6) (DE 12). The issues raised have been fully briefed, and in this posture are ripe for ruling. For the reasons noted, defendant's motion is granted.

**STATEMENT OF THE CASE**

On April 17, 2019, plaintiff amended his complaint as of right, alleging defendant unlawfully discriminated and retaliated in violation of the Americans with Disabilities Act, as amended ("ADA"), 42 U.S.C. § 12111 et seq., and the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 701 et seq.. Plaintiff also alleges a state law claim for termination in violation of North Carolina public policy. Together with its answer, defendant filed the instant partial motion to dismiss, seeking dismissal of plaintiff's state law claim.

**STATEMENT OF FACTS**

Plaintiff worked for defendant as a police officer. (Am. Compl. ¶ 14). To accommodate plaintiff's diabetes, defendant transferred plaintiff to the position of community resource and public relations officer. (Id. ¶¶ 15, 16). The position had a set work schedule that allowed plaintiff to effectively monitor and address his insulin levels to keep his condition from deteriorating. (Id. ¶ 16). However, plaintiff was forced to resign his rank as sergeant to transfer to this position. (Id. ¶ 17).

In September 2015, plaintiff was removed from his position as community resource and public relations officer and was placed in the position of patrol officer. (Id. ¶ 18). Police captain Eric Smith ("Smith") told plaintiff this was because of a shortage on the patrol team, not due to any performance issue. (Id. ¶ 20). Plaintiff then filed a grievance with defendant's human resources department, asserting hostile work environment and failure to accommodate his medical condition. (Id. ¶ 21). In November 2015, during a meeting with city officials, plaintiff was offered alternative positions as supervisor of records or a patrol officer at Barton College. (Id. ¶¶ 22, 23). However, the position of supervisor of records would require plaintiff to lose his status as a sworn officer and cost him his enforcement supplemental retirement benefits. (Id. ¶ 25). The patrol position at Barton College would require plaintiff to perform rotation shifts, which would not permit him to monitor and address plaintiff's insulin levels as required by his diabetes. (Id. ¶ 26). Other positions in the police department reasonably accommodated plaintiff, but those positions were not offered. (Id. ¶ 27). Plaintiff remained in his patrol position, hoping that he would soon receive a fixed shift patrol position when one became available. (Id. ¶ 28).

Plaintiff speaking out regarding his position was disliked by certain of his supervisors,

2

prompting negative comments and unspecified adverse conduct directed toward him. (Id. ¶ 29). As a result, plaintiff filed a charge of discrimination with the EEOC on November 18, 2015, which he made known to his supervisors. (Id. ¶¶ 30, 31). Less than one week after filing the charge, plaintiff received a negative performance evaluation, including negative assessments from his supervisors about necessary requests for additional medical leave. (Id. ¶ 31). Plaintiff's supervisors also complained to his coworkers about his use of accrued sick leave. (Id. ¶ 33). The actions of plaintiff's supervisors hindered plaintiff in finding a more suitable position. (Id. ¶ 24).

Plaintiff's health began to deteriorate drastically in late 2015 and early 2016 due to defendant's failure to accommodate his disability and negative comments from his supervisors. (Id. ¶ 32). Plaintiff was required to take FMLA leave beginning March 23, 2016. (Id. ¶ 36). He resigned shortly before his FMLA leave would end in June 2016. (Id. ¶ 37).

**COURT'S DISCUSSION**

A.  Standard of Review

To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted).

B.  Analysis

Plaintiff alleges that defendant violated the public policy of North Carolina, specifically N.C. Gen. Stat. § 143–422.2. (See Am. Compl. ¶¶ 70–72). Plaintiff's claim is based on the North Carolina Equal Employment Practices Act ("NCEEPA"), which provides in pertinent part as follows:

> It is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain, and hold employment without discrimination or abridgement on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees.

N.C. Gen. Stat. § 143–422.2. "Neither the North Carolina Supreme Court nor the North Carolina Court of Appeals has recognized a private cause of action under the NCEEPA." Smith v. First Union Nat'l Bank, 202 F.3d 234, 247 (4th Cir. 2000). However, the NCEEPA is applicable "to common law wrongful discharge claims or in connection with other specific statutory remedies." McLean v. Patten Communities, Inc., 332 F.3d 714, 720 (4th Cir. 2003); see Howard v. Coll. of the Albemarle, 262 F. Supp. 3d 322, 336 (E.D.N.C. 2017) ("To prove a claim of wrongful discharge in violation of North Carolina public policy, a plaintiff must identify and rely upon a specific North Carolina statute or North Carolina constitutional provision stating North Carolina's public policy.").

Plaintiff's claim is one for wrongful termination. In the present case, plaintiff was not actually terminated, but resigned his position. (Am. Compl. ¶ 37). As such, the court must determine if constructive discharge is sufficient to support a wrongful discharge claim based on public policy in North Carolina.

"North Carolina courts and federal courts applying North Carolina law have . . . repeatedly [found] that no private cause of action exists for retaliation, hostile work environment, disparate

4

treatment, or constructive discharge in violation of public policy." Jones v. Duke Energy Corp., 43 F. App'x 599, 600 (4th Cir. 2002) (per curiam); see, e.g., Gallimore v. Newman Mach. Co., 301 F. Supp. 2d 431, 453–54 (M.D.N.C. 2004); Faircloth v. Duke Univ., 267 F. Supp. 2d 470, 475–76 (M.D.N.C. 2003); Mitchell v. Bandag, Inc., 147 F. Supp. 2d 395, 400 (E.D.N.C. 1998); Cortes v. McDonald's Corp., 955 F. Supp. 539, 541 (E.D.N.C. 1996). In Whitt v. Harris Teeter, Inc., the North Carolina Supreme Court held that, "[f]or the reasons stated in the dissenting opinion, the decision of the Court of Appeals is reversed." 359 N.C. 625, 625 (2005) (per curiam). Thus, the North Carolina Supreme Court refused to recognize a claim for wrongful discharge in violation of public policy based on hostile work environment or retaliation. See Whitt v. Harris Teeter, Inc., 165 N.C. App. 32, 43–45 (2004) (McCullough, J., dissenting).[1]

Plaintiff nonetheless argues that a cause of action for wrongful constructive discharge is appropriate in this case. He asserts his claim is "distinguishable from ordinary constructive discharge claims" because his claim is "premised on a threat to the employee's physical health." (Pl. Brief (DE 14) at 9, 16). Plaintiff raises a distinction without a difference. In Faircloth, the court considered whether a state common law claim for wrongful constructive discharge would lie where plaintiff's exposure to tobacco smoke at work set off asthma attacks. 267 F. Supp. 2d at 471–72. Consistent with other courts, the court found that no cause of action for wrongful constructive discharge existed under North Carolina law. Id. at 476. Similarly, in Gallimore, plaintiff contended that defendant assigned him to another department, forcing plaintiff to resign to avoid "crippling injury." 301 F. Supp. 2d at 435, 452. Rather than analyzing plaintiff's constructive discharge claim

---

[1] Prior to Whitt, the North Carolina Court of Appeals also declined several times to recognize a cause of action for wrongful constructive discharge. See Beck v. City of Durham, 154 N.C. App. 221, 231 (2002); Graham v. Hardee's Food Sys., Inc., 121 N.C. App. 382, 385 (1996).

on the facts presented, as it did under the ADA, the Gallimore court concluded as a matter of law that plaintiff's state law cause of action did not exist. See id. at 451–54. Faircloth and Gallimore are persuasive examples demonstrating that a "threat to physical health" is not actionable under state common law if discharge is constructive. See Jones, 43 F. App'x at 600. Accordingly, plaintiff's cause of action for termination in violation of North Carolina public policy is dismissed with prejudice for failure to state a claim.

## CONCLUSION

Based on the foregoing, defendant's partial motion to dismiss (DE 12) is GRANTED. Plaintiff's fifth cause of action for termination in violation of North Carolina public policy is DISMISSED WITH PREJUDICE.

SO ORDERED, this the 7th day of August, 2019.

_____
LOUISE W. FLANAGAN
United States District Judge